*1321
 
 GARWOOD, Circuit Judge:
 

 In this Chapter 7 proceeding the bankruptcy trustee sold to appellee Herring National Bank (the Bank) the bankruptcy estate’s interest in an unexempted, immature cotton crop planted by the debtor, appellant Michael Don Hardage (Hardage). After the sale, Hardage attempted to claim the cotton as exempt. The bankruptcy court disallowed the exemption and entered a personal judgment against Hardage and in favor of the Bank based on estimates of the value of the mature cotton. The district court affirmed, Hardage appeals, and we reverse and remand.
 

 Facts and Proceedings Below
 

 During the end of June 1986, Hardage planted cotton on approximately one hundred sixty-six acres of land in Wilbarger County, Texas. Sixty-eight acres of the cotton were planted on a one hundred thirty-three acre tract of land that Hardage owned; ninety-eight acres were planted on land that he leased from his aunt, the Mueller Place, apparently for the standard rental of one-fourth of the harvested crop. It is the Mueller Place cotton that gives rise to the present controversy.
 

 On July 8, 1986, Hardage filed a petition for relief under Chapter 7 of the Bankruptcy Code. He designated his one hundred thirty-three acre tract as an exempt homestead pursuant to 11 U.S.C. § 522(b); Tex. Const. art. XVI, §§ 50, 51; Tex.Prop.Code Ann. §§ 41.001(a)(1), .002(a) (Vernon 1984). He did not, however, claim any portion of the Mueller Place cotton as exempt, and his schedule of assets did not mention the Mueller Place cotton and showed no unex-empt assets of any value. At the initial creditors meeting, the Bank, which was one of the main creditors, inquired about the Mueller Place lease. Hardage responded that the lease had “almost no value.”
 

 The Bank subsequently inspected the lease, determined that the immature cotton had value, and offered the trustee $500 for the estate’s interest in the cotton. The trustee notified the interested parties of his intent to sell the estate’s interest in the Mueller Place cotton. At the sale, Hard-age bid in excess of $500 but less than the winning bid of $2,150 tendered by the Bank. The trustee executed a “Bill of Sale” on November 6, 1986, that purported to sell, without any warranties, “[a]ll of the estate’s interest in the Debtor’s 1986 farming crop, crop proceeds and all other appurtenances thereto.”
 

 Four days later Hardage filed an amendment to his schedule of exempt property, claiming a further homestead exemption on sixty-seven acres of the ninety-eight acres of cotton planted on the Mueller Place.
 
 [1]
 
 He estimated that the sixty-seven acres of cotton, which he previously estimated to be worthless, had a value of $4,000. He also moved for a determination of the estate’s interest in the crop. He estimated that it would be ready for harvest on December 15. The bankruptcy court held a hearing on Hardage’s motion on December 1, 1986, and ordered Hardage to submit documentation showing his expenses and receipts. Hardage submitted a brief and some documentation on December 24, 1986. He argued that the Bank “stands in the shoes of the Trustee” and that if the bankruptcy court allowed the exemption, he should receive the proceeds from the sale of the mature cotton. He did not provide receipts or other documentation showing the sale price of the cotton because, despite his earlier prediction that the cotton would be ready for harvest in December, he did not harvest it until the middle of February 1987. However, he did not explain to the bankruptcy court why he did not provide the receipts.
 

 The bankruptcy court, entered its memorandum and order on February 4, 1987,
 
 In re Hardage,
 
 69 B.R. 681 (Bankr.N.D.Tex. 1987). The court denied the exemption for the sixty-seven acres of Mueller Place cot
 
 *1322
 
 ton. The bankruptcy court reasoned that when the Bank purchased the unexempted cotton, it was the property of the estate and therefore could be sold by the trustee. Finding that the Bank had detrimentally relied on Hardage’s original exemptions schedule when purchasing the cotton, the bankruptcy court held that under
 
 In re Williamson,
 
 804 F.2d 1355 (5th Cir.1986), it could not allow Hardage to amend his exemptions. Turning to the problem of valuation, the court ruled that because Hardage’s “brief does not contain full information and is not intelligible,” it would determine the cotton’s value based on the Projections of Expenses and Crop Proceeds of the Agricultural Stabilization and Conservation Service (ASCS), which Hardage submitted. Using those figures and allowing only Hardage’s post-petition expenses, the bankruptcy court determined that the Bank was entitled to $4,165 ($42.50 x 98 acres) for the cotton. The court also ruled that the Bank was entitled to 98/166 of the federal government agency Payment-in-Kind payments. The bankruptcy court entered judgment on its findings, including a personal judgment against Hardage and in favor of the Bank on the $4,165 finding.
 

 Two weeks later, Hardage moved to clarify the bankruptcy court’s order. He claimed that he had not been able to sell the cotton crop for the amounts projected by the ASCS. He also requested the bankruptcy court to redetermine the amount to which the Bank was entitled in light of the rental due his aunt. The bankruptcy court denied his motion, not addressing this latter argument and finding that his attempt to show the actual purchase price was tardy. Hardage subsequently filed a motion to reconsider in which he explained that he did not harvest the Mueller Place cotton until after the bankruptcy court entered its judgment based upon the ASCS projections. He did not explain why he had not included this pertinent information in his earlier brief and motion. We assume that this motion was denied, although the record does not expressly reflect whether the bankruptcy court ruled on it.
 

 Hardage then appealed to the district court. The district court affirmed on the basis of the bankruptcy court’s reasoning. This appeal followed.
 

 Discussion
 

 Hardage builds his argument on two uncontested holdings of the bankruptcy court. First, under Texas law he could claim sixty-seven acres of Mueller Place cotton as part of his exempt homestead. Second, he had the right to amend his schedule of exemptions “at any time before the case is closed.” Bankr.Proc.R. 1009.
 
 See In re Williamson,
 
 804 F.2d 1355, 1358 (5th Cir. 1986). Hardage argues that the bankruptcy court, therefore, erred in not allowing his amended exemption. He implies but does not expressly argue that if the bankruptcy court had allowed the amendment, he could keep the proceeds from the February sale of sixty-seven acres of the mature Mueller Place cotton.
 

 Hardage, however, misunderstands the effect of his delay in amending his schedule of exemptions. Because Hardage had not yet claimed the exemption, the immature Mueller Place cotton was the property of the estate when the bankruptcy trustee sold it to the Bank. 11 U.S.C. §§ 522(b), 541(a)(1).
 
 See Matter of Goff,
 
 706 F.2d 574, 578-79 (5th Cir.1983);
 
 Payne v. Wood,
 
 775 F.2d 202, 204 (7th Cir.1985),
 
 cert. denied
 
 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986).
 
 See generally
 
 4
 
 Collier on Bankruptcy
 
 11541.02[3] (15th ed. 1987). The trustee clearly was empowered to sell the property of the estate. 11 U.S.C. §§ 363(b), (c), 704(1). “Once the property enters the estate, it does not matter whether the property changes form.”
 
 Payne,
 
 775 F.2d at 204 (citing 11 U.S.C. §§ 541(a)(6)). In
 
 Payne,
 
 for example, the court held that the insurance proceeds from destroyed, unexempted household items, which perhaps originally could have been exempted, were the property of the bankruptcy estate. Here, once the bankruptcy trustee sold the immature Mueller Place cotton to the Bank, the proceeds of the sale, not the cotton, were the property of the estate. It is against those proceeds that Hardage must make his ex
 
 *1323
 
 emption claim unless the trustee was required to avoid the sale to the Bank.
 

 Hardage has offered no reason other than his exemption claim to justify avoiding the sale. He has not challenged the adequacy of the sale price and nothing in the record suggests that the Bank was other than a good faith purchaser.
 
 See In re Willemain,
 
 764 F.2d 1019, 1023 (4th Cir.1985) (for the purposes of the Bankruptcy Code, a “good faith purchaser” is “one who purchases the assets for value, in good faith, and without notice of adverse claims”) (citations omitted). Thus, the Bankruptcy Code would not have specifically required or authorized the trustee to avoid the sale. 11 U.S.C. § 363(n) (collusive bidding);
 
 see also
 
 Í1 U.S.C. § 549 (avoidance of post-petition transfers). Moreover, even if the bankruptcy court could have exercised its broad equitable powers to avoid the sale,
 
 [2]
 
 the equities favor the Bank. In addition to the Bank’s
 
 bona fides,
 
 the bankruptcy court found that the Bank purchased the immature cotton in reliance on Hardage’s original exemption claim. Nothing in the record suggests that this finding is erroneous. What the record does plainly suggest is that Hardage attempted to conceal the Mueller Place cotton. In such circumstances, equity will not countenance depriving the Bank of the benefit of the bargain after it has invested its time and money.
 
 [3]
 
 Thus, we hold that the Bank is entitled to the proceeds of the sale — apparently made in mid-February 1987 — of the Mueller Place cotton less appropriate expenses and charges.
 
 [4]
 

 Having so held, we nonetheless must reverse the district court’s judgment affirming the bankruptcy court. The bankruptcy court determined that the amount to which the Bank was entitled should be based upon the ASCS projections instead of the actual sale price. The bankruptcy court apparently did so based on the mistaken assumption that the cotton had in fact been sold but that Hardage had not submitted the actual sale receipts. The court, in other words, should have granted Hardage's Rule 59 motion to reconsider in which he alleged to the court promptly after its initial memorandum opinion that he had sold the cotton for less than the $150 estimated by the court, and this sale occurred in February rather than December, as assumed by the court and, originally, by the parties.
 
 [5]
 

 
 *1324
 
 Finally, because the bankruptcy court misapplied
 
 Williamson,
 
 it should also reconsider Hardage’s exemption claim on remand. Under
 
 Williamson,
 
 the bankruptcy court could disallow the amendment only “if there is a showing of the debtor’s bad faith or prejudice to the creditors.” 804 F.2d at 1358 (citing
 
 In re Doan,
 
 672 F.2d 831, 833 (11th Cir.1982)). In
 
 Williamson,
 
 the court held that the only relevant prejudice is harm to the creditor’s litigation posture because of some detrimental reliance on the debtor’s initial exemption claim. 804 F.2d at 1358. The bankruptcy court erroneously considered the Bank’s detrimental reliance as the purchaser of the cotton instead of determining whether the Bank, as creditor, or any of the other creditors had detrimentally relied upon Hardage’s original exemptions. On remand, the bankruptcy court should consider this issue as well as whether Hardage acted in bad faith. The record strongly suggests that Hardage attempted to conceal the Mueller Place cotton. Under
 
 In re Doan,
 
 upon which the
 
 Williamson
 
 court relied, concealment of an asset bars the exemption of that asset. 672 F.2d at 833.
 
 See also Payne,
 
 775 F.2d at 205. However, should Hardage prevail his exemption would run to the trustee’s net proceeds from the November 1986 sale.
 

 Conclusion
 

 Accordingly, we reverse the district court’s affirmance of the bankruptcy court’s judgment and remand for proceedings consistent with this opinion.
 

 REVERSED and REMANDED.
 

 [1]
 

 . In Texas, a family may claim two hundred acres as an exempt homestead,
 
 see
 
 Tex. Const. art. XVI, § 51; Tex.Prop.Code Ann. § 41.001(a)(1) (Vernon 1984). The bankruptcy court found that Hardage qualified for the family homestead exemption. Thus, in addition to his one hundred thirty-three acre tract, Hardage could only attempt to exempt sixty-seven of the ninety-eight acres of Mueller Place cotton.
 

 [2]
 

 . Section 363(n), which grants the trustee the power to avoid sales of the estate’s property in cases of collusive bidding, “is a supplement to the general powers of the court to void the sale for other irregularities.” 2
 
 Collier on Bankruptcy
 
 ¶ 363.14, at 363-41. Although the cases cited in support of this proposition are “of doubtful relevance” because sales under section 363 are no longer confirmed by the court,
 
 id.
 
 ¶ 363.01, at 363-6 n. 3, bankruptcy courts might still have the equitable power to avoid sales that involve misconduct in the course of the sale proceedings.
 
 See, e.g., In re Ranch House of Orange-Brevard, Inc.,
 
 773 F.2d 1166, 1169 (11th Cir. 1985) ("bankruptcy courts are inherently courts of equity with broad remedial powers”).
 

 [3]
 

 . The parties have not cited nor briefed 11 U.S. C. § 363(m), which provides in pertinent part:
 

 "The reversal or modification on appeal of an authorization under [the subsection of section 363 applicable here] of a sale ... does not affect the validity of a sale ... under such authorization to an entity that purchased ... such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale ... were stayed pending appeal.”
 

 In
 
 In re Willemain,
 
 764 F.2d 1019, 1023 (4th Cir.1985), the court applied section 363(m) to the sale of the debtor’s limited partnership interest in the course of a Chapter 7 proceeding, holding that the debtor’s failure to comply with section 363(m) mooted his appeal.
 
 See also In re Suchy,
 
 786 F.2d 900, 901-02 (9th Cir.1985) (chapter 11 proceeding). We do not determine whether section 363(m) is applicable in this case, but we note that if it were, the outcome would be the same. Moreover, the policy of finality expressed by section 363(m),
 
 id.
 
 at 901, 902, further supports our decision today.
 

 [4]
 

 . We observe that the bankruptcy court did not address the matter of the aunt’s rental share of the crop (nor did the district court). We assume it will do so on remand, and we express no opinion in respect thereto.
 

 [5]
 

 . Because we reverse the district court’s judgment affirming the bankruptcy court, we do not reach Hardage’s claim that the bankruptcy court lacked jurisdiction to enter a personal judgment against him and in favor of the Bank, as opposed to merely ordering him to turn over the proceeds of the sale. We note, however, that the Bankruptcy Code does not suggest that jurisdiction was lacking. In order to effectuate de
 
 *1324
 
 livery pursuant to the estate’s sale of the property, the bankruptcy court had "core proceeding” jurisdiction to order Hardage to turn over the Mueller Place cotton, 28 U.S.C. § 157(b)(2)(E), and to enter any orders and judgments necessary to effectuate its turnover order. 28 U.S.C. § 157(b)(1). Failure to comply with a turnover order could result in an adjudication of contempt.
 
 See United States v.
 
 Revie,834 F.2d 1198 (5th Cir.1987). The same analysis supports an order to turn over the net proceeds of the February sale of the Mueller Place cotton. It would appear likely that in the alternative to such a turnover order the bankruptcy court might enter a personal judgment under 11 U.S.C. § 105(a), which provides:
 

 "(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.
 

 No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."
 

 Since in the present circumstances a personal judgment similar to the one entered by the bankruptcy court, considered as the functional equivalent of a turnover order, would relate to a proceeding “affecting the liquidation of the assets of the estate,” 28 U.S.C. § 157(b)(2)(G), the bankruptcy court likely would have "core proceeding" jurisdiction for its entry. In a sense a judgment for the net proceeds of the sale would be a less drastic judicial action than a turnover order since it does not carry with it the threat of contempt sanctions.