**In re SUNDIAL ASPHALT CO., INC., Debtor.**

**SUNDIAL ASPHALT CO., INC., Appellant,**

v.

**V.P.C. INVESTORS CORP., Appellee.**

Nos. CV 92–808 (ADS), CV 92–1202 (ADS), CV 92–1790 (ADS), CV 92–1791 (ADS), CV 92–2571 (ADS), CV 92–3990 (ADS) and CV 92–3991 (ADS).

United States District Court, E.D. New York.

Nov. 23, 1992.

**74**

Zinker & Gelfand (Kenneth Cooperstein, of counsel), Smithtown, N.Y., for debtor-appellant.

Moritt, Hock & Hamroff (Neil J. Moritt, of counsel), Hempstead, N.Y., for appellee V.P.C. Investors Corp.

Macco Hackeling Stern & Christensen (Michael Macco, of counsel), Huntington, N.Y., for Creditors' Committee.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The Court is faced with several interesting and unusual questions in these four consolidated bankruptcy appeals brought by a financially troubled operating company with regard to a purportedly "burdensome" executory contract for the sale of the company's only asset, namely, an asphalt plant in Suffolk County.

These appeals concern four different orders signed by the United States Bankruptcy Judge Robert John Hall. Before addressing the merits of these appeals, the Court sets forth a brief chronology of the actions in both the Bankruptcy Court and this Court:

1. On March 14, 1992, this Court signed an order granting the motion by debtor-appellant Sundial Asphalt Co. Inc. ("Sundial") Sundial to consolidate its appeals of the February 20, 1992 and March 4, 1992 orders of the U.S. Bankruptcy Court. The February 20, 1992 order granted VPC Investors Corp. ("VPC") relief from the automatic stay permitting it to pursue an action for specific performance of a land sale contract in the Supreme Court, Suffolk County.

2. The March 4, 1992 order of Judge Hall denied the debtor Sundial's application for approval of its decision to reject the contract of sale as "burdensome" to the estate—on the ground that Sundial failed to sustain its burden of proving that the rejection would be beneficial to the estate.

3. After Judge Hall determined from the bench on April 1, 1992 that the contract must be assumed, Sundial filed its plan of reorganization on April 7, 1992, which provided for rejection of the contract and payment of 100% of all claims, including that of VPC for damages caused by the rejection. Judge Hall disregarded Sundial's proposed counter-order on assumption, findings of fact and conclusions of law, and instead, on May 14, 1992, signed VPC's proposed order and proposed findings of fact and conclusions of law, without modification except for inserting a statement in pencil rejecting Sundial's letter request for a stay. The May 14, 1992 order directed that the contract be assumed and that Sundial convey a deed at 10 a.m. on May 14, 1992.

On May 18, 1992, following oral argument of an order to show cause, this Court signed an order staying the May 14, 1992 order of the Bankruptcy Court pending appeal, and granted Sundial's application to consolidate its appeal of that order along with the other two appeals which were pending.

4. On June 17, 1992, the Bankruptcy Court heard Sundial's motion for reconsideration of the Assumption Order, which was denied by order dated June 24, 1992. Sundial appealed. During a

telephone conference with chambers on July 16, 1992, the Court granted Sundial's application to consolidate its appeal of Judge Hall's June 24, 1992 order denying reconsideration of the previous order which directed that the contract be assumed ("Compel Assumption" order), with the three prior pending appeals. Having heard oral argument by the debtor and vendee on November 20, 1992, concerning the effect of these orders on the bankrupt estate, and having listened to the arguments of counsel for the unsecured creditors who was granted permission to intervene, the Court now considers each of these four appeals.

### FACTUAL BACKGROUND

VPC is a shell corporation, a holding company that engages in the business of asphalt roadwork through contracts with local affiliates. On or about February 12, 1987, VPC and Sundial entered into two agreements. Under the first agreement (the "Option Agreement"), Sundial agreed to sell its property together with the improvements thereon and other assets at the option of VPC for the sum of $1,200,000. The Option Agreement granted VPC an option to purchase the property, and VPC paid $62,000 for the right to this option. The agreement provided that no money was to be paid at the time of the sale and that the entire purchase price was to be covered by a $1.2 million purchase money mortgage payable over ten years, to be delivered at closing. No cash was to be paid at the time of the closing. The fact that VPC timely exercised the option is not disputed.

The second agreement (the "Lease") was executed contemporaneously and was a lease to VPC for a portion of the Sundial property at $1.00 per year. The debtor describes this as "a small part of the property on which the plant is situated for the purpose of housing its asphalt contracting affiliates." The lease provided that its term "is intended to be of equal duration with a period commencing February 12, 1987, and terminating with the purchase, by the tenant [VPC], of all the assets of the landlord [Sundial] (under the Option Agreement)."

These agreements are a major area of dispute. The debtor Sundial contends that the lease and contract of sale are two separate and distinct documents, separately executed, with neither one containing a provision incorporating the other by reference. The purchaser VPC takes the opposite viewpoint, emphasizing that these were two "closely related agreements." Sundial also claims that it was induced to execute these agreements in anticipation of large profits expected to arise from VPC's oral promise to purchase its requirements of asphalt from Sundial—not less than 100,000 tons per year—which VPC allegedly did not do. According to counsel for the debtor, Sundial had planned to use the profits from its sales to VPC during the four-year contract period to fund the construction of a new asphalt plant at another site in Bohemia. When the profits from the VPC asphalt purchases were not forthcoming, Sundial brought an action in state court on various theories to cancel or rescind the agreements with VPC.

Subsequently, VPC moved for summary judgment in the state court on its counterclaim for specific performance of the 1987 option contract with Sundial. As stated above, the contract called for Sundial to convey its sole productive facility—the asphalt plant at 65 Comsewogue Road in Setauket—to VPC, its largest customer. Realizing that a decree of specific performance would render the contract for the sale of land no longer executory or rejectable in bankruptcy, Sundial filed its Chapter 11 petition on December 9, 1991—one day before the return date of the summary judgment motion.

Sundial subsequently made a motion in the bankruptcy court to reject the executory contract, pursuant to 11 U.S.C. § 365(a) as burdensome to the estate and the unsecured creditors. A week before the hearing on that motion, VPC moved, pursuant to 11 U.S.C. § 362 for relief from the automatic stay so that it could pursue the State court action and obtain a decision from State Supreme Court Justice Marquette

Floyd on its prior summary judgment motion for specific performance of the option clause in the contract. Purportedly, VPC argued that a determination in state court would prove helpful to the Bankruptcy Court's deliberations. Judge Hall granted VPC's motion and lifted the automatic stay for the limited purpose of having Justice Floyd render his decision.

Sundial claims that Judge Hall refused to consider the effect of his order on the estate or upon the unsecured creditors. Sundial also notes that counsel for the unsecured creditors, who was retained only two days prior to the hearing on the rejection motion and cross-motion for assumption, actually appeared at the hearing and expressed to Judge Hall the need for more time to ascertain the benefits of rejection or assumption of the executory contract. According to Sundial, if the debtor were compelled to convey its plant, it would effectively be out of business, with the ensuing irreparable damage to its unsecured creditors.

## THE DEBTOR SUNDIAL'S CONTENTIONS

Counsel for Sundial takes the position that Judge Hall was biased against the claims of Sundial and openly expressed a conviction that Sundial's filing in the bankruptcy court was made in "bad faith"

"because Sundial was seeking to stop state court litigation, had furnished four luxury cars to employees and employed Frank Schambra's brother-in-law as plant manager for eight years. This erroneous conviction and an inappropriate, preconceived goal to have the contract performed regardless of effect on creditors or the debtor guided Judge Hall in each of his four orders. Thus, Judge Hall's private morality, and not governing law or the proof adduced, was the basis for the orders herein, with only lip service paid to the requirements of due process. It is not bad faith for a financially-troubled operating company to file a bankruptcy petition to reject a contract of sale that would put it out of business, where the sale was not intended to have that

effect at the time the contract was executed several years theretofore. It is not wrongful to compensate three key employees of a Subchapter S corporation with leased luxury cars. It is not malfeasant to hire your brother-in-law to manage plant operations in your closely-held company. It is, however, erroneous for a bankruptcy judge to pre-judge a case based on immaterial matter and then relentlessly to refuse to change his mind in light of the facts and controlling law" (Appellant's Brief at p. 12).

Sundial asserts that if an executory contract is rejected, the "counterparty" has an unsecured claim for breach of contract damages, which will make it whole to the same extent that other creditors are made whole. According to counsel, "the test used to decide whether to approve a debtor's decision to assume or reject an executory contract is the 'business judgment' test, which focuses almost entirely on the effect on unsecured creditors."

With regard to the unsecured creditors, Sundial claims that it sustained its burden of proving that the estate would benefit from rejection of the contract when it proved that unsecured creditors would be paid in nineteen (19) months if the contract were rejected and Sundial continued operations. According to counsel, if the contract were assumed, the unsecured creditors would not be paid for six years, if at all.

Further, Sundial argues that VPC failed to prove that assumption would benefit the estate because it offered no financial information on its company and no information on the source of the cash to pay the mortgage installments. Sundial emphasizes that all of this took place very early on in the bankruptcy action and that Sundial should have been permitted to re-apply for approval of its decision to reject the contract until a plan was approved or the case was dismissed. According to counsel, one of the major procedural errors which occurred dealt with the acceptance/rejection of the contract. He states that

"a bankruptcy court is by statute authorized to approve or disapprove a debtor's decision to accept or reject a contract; it

is not authorized—either by statute or case law—to compel a debtor to accept or reject a contract. It is violative of due process for a bankruptcy court to decree the specific performance in a contested matter (motion); it may do so only in an adversary proceeding (plenary proceeding). A bankruptcy court is mandated to abstain from a similar proceeding where, as here, there is pending between the same parties a state court proceeding for specific performance of the contract" (Appellant's Brief at p. 14).

In light of Judge Hall's statements on the record that he did not believe that Sundial had any chance of succeeding in or out of bankruptcy, Sundial argues that the Judge should have reconsidered his order directing the assumption of the contract once Sundial's subsequent actual operating results supported its projections and demonstrated that Judge Hall's projection of failure was incorrect.

The debtor-appellant has summarized its arguments as follows:

I. SUNDIAL'S DECISION TO REJECT THE EXECUTORY CONTRACT WITH VPC WAS SUPPORTED BY BUSINESS PROJECTIONS CUSTOMARILY CONSIDERED BY ASPHALT PLANT OPERATORS IN MAKING BUSINESS DECISIONS AND THE COURT WAS NOT AUTHORIZED TO MORALIZE OR TO USE UNREASONABLE STANDARDS IN WEIGHING THE EVIDENCE.

A. Sundial filed its bankruptcy petition in good faith and is entitled to the protections of the bankruptcy code; Judge Hall's moralization that the filing was in bad faith has pervaded all four orders and deprived Sundial of due process.

B. The contract of sale is executory and can be rejected.

C. Under the "business judgment" rule, Judge Hall should have approved Sundial's decision to reject the contract since Sundial proved that the claims of unsecured creditors would be satisfied within 19 months if the contract were rejected, where it would take six years, if at all, if the contract were assumed.

D. Rejection will not create a large claim against the estate nor would it be inequitable.

E. There are no technical obstacles to rejecting the contract.

F. The findings of act fact adopted by the Bankruptcy Court are not entitled to the weight ordinarily accorded findings under BR 8013 because Judge Hall adopted verbatim VPC's patently questionable proposed findings and subsequently demonstrated a lack of familiarity with their contents.

II. IN A CONTESTED MATTER, WHERE THE DEBTOR DULY OBJECTS TO THE LACK OF AN ADVERSARY PROCEEDING, A BANKRUPTCY COURT IS NOT AUTHORIZED TO COMPEL A DEBTOR TO ASSUME AND PERFORM AN EXECUTORY CONTRACT, PARTICULARLY IN THE ABSENCE OF PROOF THAT ASSUMPTION WILL BENEFIT THE ESTATE WHERE THERE IS PENDING A PLENARY STATE COURT PROCEEDING BETWEEN THE SAME PARTIES FOR THE SAME RELIEF, CONCERNING WHICH STATE COURT PROCEEDING THE BANKRUPTCY COURT HAD PREVIOUSLY GRANTED RELIEF FROM THE AUTOMATIC STAY.

A. Only the debtor is authorized to decide whether an executory contract should be assumed or rejected; the court's role is limited to approving or disapproving the decision.

B. Even if the court is empowered to direct assumption, it cannot do so unless the proponent of assumption proves that assumption will benefit the estate.

C. A bankruptcy court cannot decree specific performance in a contested matter based on a motion; a full adversary proceeding is necessary.

D. The bankruptcy court was required to abstain from making a decision compelling specific performance of a contract when there was a state court proceeding pending between the same parties seeking the same relief

and further, should not have lifted the automatic stay.

III. WHERE A FEDERAL COURT BASES AN ORDER ON ITS OWN BUSINESS FORECAST AND SUBSEQUENTLY, ACTUAL BUSINESS RESULTS BECOME TIMELY KNOWN WHICH DEMONSTRATE THAT THE COURT'S FORECAST WAS MATERIALLY INACCURATE, PURSUANT TO FRCP 59, THE COURT SHOULD RECONSIDER ITS ORDER UPON THE GROUND THAT THE PROSPECTIVE APPLICATION OF THE ORDER WOULD BE INEQUITABLE.

A. Reconsideration is authorized by Rule 59.

B. The unsecured creditors now support Sundial and oppose VPC.

## THE APPELLEE VPC'S RESPONSE

In disagreeing with appellant Sundial, counsel for VPC states that "the primary issue raised by this case is whether *this debtor* has met *its burden*, based upon the evidence in the record, *to reject this particular contract*, and whether the Bankruptcy Court, upon denying rejection, has the authority to compel assumption where creditors will be paid one hundred percent of their claims, secured by a mortgage, upon assumption of the Contract" (VPC Brief at p. 3) (emphasis in the original). Counsel for VPC adds that the appellee "takes substantial issue with those portions of the statement of the course of proceedings which are tainted by argument much of which is unfairly slanted, distorted, taken out of context and simply false" and asks the Court to disregard the argumentative portions of the statement.

The appellee does not dispute the fact that the debtor's decision to assume or reject an executory contract is subject to the "business judgment" rule and adds that the primary focus of the rejection/assumption analysis under the business judgment rule is the impact of the decision on the bankrupt estate (i.e., whether rejection or assumption will benefit the creditors, taking into account the interest of all parties).

However, VPC argues that from the very beginning, this bankruptcy was not filed for the benefit of the creditors, but "rather for the personal benefit of the principal shareholder, Mr. Schambra, who simply wanted 'out' of the contract" (VPC Brief at p. 5). Counsel adds that the "simple fact of the matter is that Judge Hall did not dismiss the case for 'bad faith' or on any other ground, although the record would have supported such a dismissal" (id. at p. 6). According to the appellee, assumption of the contract, not rejection, would pay creditors one hundred percent of their claims. With regard to the creditors, VPC states that the "record is clear that the position of the Creditors Committee is simply a bargaining chip ... [they] know full well that they have the $1.2 million contract with VPC in their pockets; they have no downside. What they are negotiating for is an all cash deal with VPC."

The appellee VPC's arguments are summarized as follows:

I. THE BANKRUPTCY COURT PROPERLY DENIED SUNDIAL'S APPLICATION TO REJECT THE CONTRACT OF SALE OF THE PROPERTY TO VPC.

A. Judge Hall's Findings of Fact are not "clearly erroneous" and due regard must be given to his assessment of the credibility of the Debtor's witnesses.

B. The debtor failed to satisfy the legal standard for rejection of an executory contract in the Second Circuit.

C. The purpose of the Bankruptcy Code would be subverted if the Debtor were allowed to reject the VPC contract.

II. THE BANKRUPTCY COURT CORRECTLY ORDERED THE ASSUMPTION OF THE CONTRACT AFTER THE DEBTOR FAILED TO MEET ITS BURDEN OF PROOF FOR REJECTION.

A. An executory contract must be either rejected or assumed.

B. Even if VPC had the burden of proving that assumption would benefit the estate, VPC satisfied that burden.

III. THE BANKRUPTCY COURT CORRECTLY DENIED THE DEBTOR'S

RULE 59 MOTION FOR RECONSIDERATION.

IV. THE PROCEEDING BELOW WAS A CONTESTED MATTER PURSUANT TO BANKRUPTCY RULE 9014; THE PARTIES WERE AFFORDED "DUE PROCESS OF LAW."

### STANDARD OF REVIEW

Bankruptcy Rule 8013 provides as follows:

"On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order or decree or remand with instructions for further proceedings. *Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses"* (emphasis supplied).

A district court therefore may review a bankruptcy court's legal conclusions *de novo*, but the bankruptcy court's findings of fact may not be set aside unless clearly erroneous (*see In re Chateaugay Corp.,* 104 B.R. 637 [S.D.N.Y.1989]; *Nuttleman v. Myers,* 128 B.R. 254 [D.Neb.1991]; *In re Scarlata,* 127 B.R. 1004 [N.D.Ill.1991]).

On appeal from an order of the bankruptcy court, the district court should not consider any evidence not before the bankruptcy court at the original hearing (*see Matter of Silverman,* 6 B.R. 991 [D.N.J.1980]; *Union Bank v. Blum,* 460 F.2d 197 [9th Cir.1972]).

Within the bankruptcy statutes, executory contracts are covered under 11 U.S.C. § 365. In pertinent part, § 365(a), (i), and (j) provide as follows:

"(a) except as provided in sections 765 and 766 of this title ... the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

\*  \*  \*  \*  \*  \*

(i)(1) *If the trustee rejects an executory contract* of the debtor for the sale of real property under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative, may remain in possession of such real property.

\*  \*  \*  \*  \*  \*

(j) A purchaser that treats an executory contract as terminated under subsection (i) of this section, *or a party whose executory contract to purchase real property from the debtor is rejected and under which such party is not in possession, has a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid."* (emphasis supplied).

■ If Sundial were to prevail in this matter, the appellee VPC would fit the latter criteria—namely, a party whose executory contract to purchase real property from the debtor is rejected and under which such party is not in possession. Therefore, the vendee VPC would have a right to a lien on the interest of the debtor in such property to recover any portion of the purchase price it may have paid.

Unfortunately, the bankruptcy code does not define the phrase "executory contract." However, virtually every case among the few which deal with the issues present here relies upon the legislative history and the "Countryman" definition. The Countryman definition comes from a well-known law review article quoted over and over again since 1973:

"[a] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material beach excusing the performance of the other" (Countryman, "Executory Contracts in Bankruptcy: Part I," 57 MINN. L.REV. 439, 460 [1973]).

The Court also notes *Black's Law Dictionary* which defines an executory contract as "[a] contract that has not as yet been fully completed or performed. A contract the obligation (performance) of which relates to the future."

## ·DISCUSSION

### A. *"Executory Contracts" and the "Business Judgment Rule"*

■ Under the "Conclusions of Law" section of the Order signed on May 14, 1992, the Bankruptcy Court stated the following:

"1. VPC has argued that the Contract is no longer executory within the meaning of § 365 of the Bankruptcy Code. VPC's argument is predicated upon a line of cases that suggest or hold that where a Court has rendered a decision decreeing specific performance of an executory contract, the Contract is deemed to have been executed by virtue of the Court decision or order and no longer remains executory. VPC's argument is that where, as in the present case, the motion for summary judgment for specific performance has been made, and the granting of specific performance would have been a virtual certainty but for the filing of the Chapter 11 proceeding, the contract should be treated as no longer executory. Since this Court has determined that the contract, even if it remains executory, may not be rejected and must be assumed, the Court does not reach or determine the issue as to whether the contract remains executory as a matter of law. The assumption of the Contract will have the same legal effect as it it were determined 'executed' and the state court granted specific performance."

The Court disagrees with this assessment and finds it to be clearly erroneous. Before triggering the statutory provisions which determine some of the essential issues in this case, there must be a determination as to whether the contract in the instant case is executory.

■ The Court also disagrees with the appellee's contention that because the motion for specific performance in the state would have been a "virtual certainty," the contract should no longer be treated as executory. A contract for the sale of land ceases to be executory, or rejectable in bankruptcy, at the instant a decree of specific performance is issued. No such decree has been issued in this case and it is therefore clear that the agreement remains executory. The agreement remains substantially unperformed. The buyer still has to pay the remainder of the purchase price and the seller has to give up possession and convey title. The failure of either side to complete performance here would have constituted a material breach. Clearly, we are dealing with an executory contract.

■ According to 11 U.S.C. § 365(a), *"the trustee,* subject to the court's approval, may assume or reject any executory contract or unexpired lease term of the debtor" (emphasis supplied). Section 1107(a) of the Bankruptcy Code provides that "a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter." Significantly, § 365(d)(2) further provides as follows:

"In a case under chapter 9, 11, or 13 of this title, the trustee *may* assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease" (emphasis supplied).

The Court finds nothing in the statute or the Bankruptcy Rules providing for rejection or assumption of an executory contract by any party other than the trustee or debtor in possession, and finds no authorization for the court making such an election *sua sponte,* although whatever election is made by the trustee is subject to the court's approval. The appellee contends that the bankruptcy court has such authority, but it has presented no statute or case law to support that premise. What § 365(d)(2) does provide is that the trustee has until confirmation of the plan to assume or reject, but that he can be ordered by the court to do so earlier based upon the particular circumstances of the proceeding.

Pursuant to Bankruptcy Code § 365, an executory contract must be either assumed or rejected. "It is not deemed an abuse of

the bankruptcy process to file a Chapter 11 petition solely to reject an executory contract" (*In re Bofill*, 25 B.R. 550, 552 [Bankr.S.D.N.Y.1982] ); *In re W & L Associates, Inc.*, 71 B.R. 962 [Bankr.E.D.Pa. 1987] [where rejection approved pursuant to the "business judgment" rule, court held that debtor's bankruptcy filing, even if primarily to extricate itself from this contract, was not in "bad faith" such that either dismissal or of the motion or the case was in order] ).

■ Under the "business judgment" test, an executory contract for the sale of land should be rejected if the debtor can demonstrate that rejection will benefit the estate (*see Stable Mews Associates Inc.*, 41 B.R. 594 [Bankr.S.D.N.Y.1984] ). In this regard, it is significant to note that counsel for the Creditors' Committee has filed a motion to intervene in this case in which the Creditors' Committee urges the Court to adopt the arguments of the debtor-appellant. Applying the "business judgment test," the debtor emphasizes that it will be unable to pay its creditors if its plant is sold to VPC for a ten-year mortgage. According to the appellant, unsecured creditors, if they are paid at all, will have to wait ten years to get partially paid by "an unknown and unproven entity."

The appellee relies upon a series of cases in which decrees of specific performance had been entered prior to the filing of the petition. Cases dealing with post-petition awards of specific performance are difficult to find. In *In re Pribonic*, 70 B.R. 596 [W.D.Pa.1987], a Pennsylvania Court of Common Pleas issued a final decree for specific performance *before* the debtor-vendors filed a joint voluntary petition under Chapter 7. The purchasers requested relief from the automatic stay pursuant to § 362(d)(2) on the ground that the debtors had no equity in the property and that the property was not necessary to an effective reorganization, an inapposite factual scenario. The Bankruptcy Court determined that the real estate sales agreement did not remain executory for rejection purposes after the prospective vendees obtained a final decree for specific performance. In the instant case, there has been no such final decree (*compare, e.g., In re RLR Celestial Homes, Inc.*, 108 B.R. 36 [Bkrtcy.S.D.N.Y. 1989] [real estate sales agreement does not cease to be "executory" within meaning of bankruptcy statute, simply because there has been tender of performance by purchaser]; *Kendall Grove Joint Venture v. Martinez–Esteve*, 59 B.R. 407 [S.D.Fla. 1986] [contract held to be nonexecutory so that bankrupt seller could no longer reject where prior to filing of involuntary petition state court had ordered specific performance and only task which remained was ministerial one of delivering title] ).

The Court looks to other cases which have applied the business judgment test to contracts in a bankruptcy setting. In *In re Stable Mews Associates, Inc.*, 41 B.R. 594, 595 (Bkrtcy.S.D.N.Y.1984), the Chapter 11 Trustee of the estate moved to reject the unexpired leases between the debtor as lessor and the five tenants currently occupying the debtor's building. The bankruptcy court held that the business judgment test was applicable and *required only that the trustee demonstrate that rejection of the executory contract would benefit the estate* (*id.* at p. 596) (emphasis supplied.) The primary element of such a showing is the extent to which a rejection will benefit the general unsecured creditors of the estate (*id.*, citing *Matter of Minges*, 602 F.2d 38 [2d Cir.1979] ). This may involve a balancing of interests. As the Second Circuit stated in *Minges*, "the trustee and ultimately the court, must exercise their discretion fairly in the interest of all who have had the misfortune of dealing with the debtor." The appellant claims that rejection of the executory contract in the instant case would benefit the estate since the property is the only asset of Sundial. That assertion is bolstered by the support of the unsecured creditors.

■ The "business judgment" test as envisioned by the Second Circuit in *Control Data Corp. v. Zelman*, 602 F.2d 38 (2d Cir.1979), leaves room for the court to consider as a factor in approving the rejection of a contract for the sale of real property the rights of vendees and other affected

parties (see In re Meehan, 46 B.R. 96 [Bankr.E.D.N.Y.1985], aff'd 59 B.R. 380 [1986]). "The primary issue when applying the 'business judgment' test is whether rejection would benefit the general unsecured creditors, with resolution of this issue possibly involving a balancing of interests" (Meehan, 46 B.R. at p. 101); see Matter of Jackson Brewing Co., 567 F.2d 618 [5th Cir.1978] [five year option, granted for consideration of $1,000, to purchase land worth at least $5.1 million for approximately $2.8 million was burdensome executory contract and reorganization court properly authorized trustee of debtor's estate to reject that contract, even if only effect of that rejection was to make assets available to other creditors]). The Court· may refuse to authorize rejection where the party whose contract is to be rejected would be damaged disproportionately to any benefit to be derived by the general creditors of the estate (see Robertson v. Pierce, 23 B.R. 798, 801 [9th Cir.1982]).

The appellee VPC relies heavily upon In re Meehan, 59 B.R. 380, 383 (E.D.N.Y.1986) in which the right of· a bankruptcy court to exercise a power of approval over a Chapter 13 plan providing for the rejection of an executory contract was first addressed in this Circuit. Judge Wexler heard the appeal in Meehan and determined that the 9th Circuit's holding in In re Alexander, 670 F.2d 885 (9th Cir. 1982)—the only district or circuit case previously addressing the issue—was not applicable to Meehan, since Alexander involved a subsequent challenge to a provision contained in an already confirmed Chapter 13 plan. Judge Wexler disagreed with Alexander, noting that

"[i]nsofar as Alexander may be read to preclude a bankruptcy court from exercising a power of approval over the rejection of an executory contract regardless of whether a Chapter 13 plan had been confirmed, this court must respectfully disagree with the Ninth Circuit.... It by no means implies that the bankruptcy court's general power to exercise approval over a trustee's proposed rejection is in any way circumscribed merely because

a Chapter 13 plan has been filed" (In re Meehan, supra, at p. 384).

Significantly, Judge Wexler held in Meehan that the Bankruptcy Court did have the power to withhold approval from the debtor's Chapter 13 plan because of the debtor's rejection of the contract with the vendee. Having determined that the bankruptcy court had the power to rule as it did, Judge Wexler turned to the issue of whether the bankruptcy judge correctly exercised that power in the immediate circumstances. He stated as follows:

"[t]he standard for determining whether a debtor's executory contract can properly be rejected is that of the 'business judgment test'.... The primary issue under the business judgment test is whether rejection of the contract would benefit general unsecured creditors [citations omitted]. While disappointment of a purchaser's expectations is an insufficient ground for a court to withhold approval of a rejection, 'if in the judgment of the bankruptcy court, an estate is solvent in the sense that a 100 percent payout will occur in the event of liquidation, ... it is within the discretion of the court to decline to authorize rejection of a contract on the grounds no benefit would accrue to the creditors from the rejection' " (citing In re Huang, 23 B.R. 798, 801 [Bankr. 9th Cir.1982]) (emphasis supplied).

This Court finds Meehan distinguishable. First, Meehan involved a filing under Chapter 13, not Chapter 11. Second, the property purchasers in Meehan were granted summary judgment in the state court, after which a trial was conducted to determine the appropriate remedy. In the instant case, there was no summary judgment ruling in the state court, nor was there a trial—in fact, the momentous relief granted by the bankruptcy court in the instant case was effected upon motion and a hearing, not upon a full-blown adversary proceeding—a procedure objected to by the debtor. Third, Judge Wexler found that the contract at issue in Meehan was not executory. Finally, the debtor in Meehan was solvent and there was no question that the unsecured creditors would receive 100%

of their claims if the contract were assumed.

The Court finds significant the following excerpt from the district court decision in *Meehan*:

"If rejection of the contract will not result in unsecured creditors receiving a greater amount on their claims (e.g., the estate is solvent and the unsecured creditors will receive 100 percent of their claims without resort to rejection), rejection may be disapproved" (*id.* at p. 101).

Based upon the representations of counsel for the unsecured creditors that they expect to be paid more rapidly by rejection of the executory contract in this case, there appears to be a genuine dispute concerning whether rejection is appropriate. Therefore, the Court disagrees with the appellee's contention that this case "falls squarely within *Meehan.*"

Rather, the Court turns for guidance to *In re Hardie*, 100 B.R. 284 (Bkrtcy. E.D.N.C.1989), in which the bankruptcy court held that a Chapter 12 debtor in possession has the same right to assume or reject an executory contract as a trustee. Significantly, the Court found that a debtor-vendor who had signed a contract giving an option to purchase property for a specified price would be permitted to reject the option, which constituted an executory contract, where nothing in the record suggested that the desire to reject the option contract was not based upon sound business judgment. The court in *Hardie* went on to note the following:

"The right of a debtor in possession to reject certain contracts is fundamental to the bankruptcy system because it provides a mechanism through which severe financial burdens may be lifted while the debtor attempts reorganization [citations omitted] ... When an executory contract is rejected, the nondebtor party is entitled to treat the rejection as a breach and to file a claim for monetary damages [citations omitted].

... A contract is executory if performance is due to some extent on both sides (*citing Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1048 [4th Cir.1985, *cert. denied*, 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 [1986] ).

... Most courts have held that a land sale contract is executory when the debtor-vendor has not yet conveyed or been ordered to convey title. A case very much on point is *In re Waldron*, 36 B.R. 633 (Bankr.S.D.Fla.1984), *rev'd on other grnds*, 785 F.2d 936 [11th Cir.1986], in which the bankruptcy court held that an option to purchase real estate which the debtors had given a prospective purchaser prepetition was an executory contract which the debtors could reject pursuant to § 365. The bankruptcy court held that the debtors had the continuing obligation under the contract to forbear from revoking their offer to sell and the prospective purchaser had the unperformed obligations remaining of tendering its acceptance of the offer and then complying with the terms of purchase. In *In re Coordinated Financial Planning Corp.*, 65 B.R. 711 [9th Cir.BAP 1986], the court, while noting that the bankruptcy court's decision in *Waldron* had been reversed, cited with approval the court's holding in that case that an option contract to purchase real estate was an executory contract subject to rejection ... in view of the purpose behind § 365 of allowing the debtor's estate to assume those agreements which are beneficial and to reject those which are not.... [citations omitted]. Several other courts have held that a land sale contract which the debtor-vendor sought to reject was executory even when the purchase price due under the contract had been tendered, but when neither title nor possession had been transferred and no order for specific performance had been entered. *In re Alexander*, 670 F.2d 885 [9th Cir.1982]; *In re W & L Associates, Inc.*, 71 B.R. 962 [Bankr.E.D.Pa. 1987] )."

As the court in *Hardie* noted, "once a contract is determined to be executory, rejection is proper if it would be advantageous to the debtor's estate" (*In re Hardie, supra*, at p. 287). As in *Hardie*, in this case Sundial emphatically asserts that

rejection would be advantageous to the estate in this case. The court in *Hardie* added some very significant language, namely that "the court should defer to a debtor's decision that rejection of a contract would be advantageous unless the decision is so unreasonable that it could not be based on sound business judgment, but only on bad faith or whim."

Having reviewed the record, the Court finds that there is substantial evidence that the debtor's desire to reject its option contract with VPC is based upon sound business judgment. Having reviewed the request of the creditors' committee to intervene and to support Sundial's request to reject, the Court finds that the position of the creditors' committee reinforces this conclusion.

### B. *The Debtor's Rule 59 Motion*

Subsequent to the bankruptcy court's order compelling assumption, the debtor moved, pursuant to Fed.R.Civ.P. 59, for reconsideration of its order. Bankruptcy Rule 9023 states that "Rule 59 F.R.Civ.P. applies in cases under the Code." The purpose of a motion for reconsideration is to allow a court to reevaluate the basis for its decision, and such motions are appropriate "when the court has made an error in interpreting the facts or the law or when there has been significant change in the law or facts since submission of the issue to the court" (*see Keyes v. National R.R. Passenger Corp.*, 766 F.Supp. 277 [E.D.Pa. 1991]).

In seeking relief from a judgment denying rejection by way of a Rule 59 motion, a debtor must satisfy his burden of showing that evidence in support of the motion could not have been discovered previously "despite diligent efforts to ferret it out" (*In re Crozier Bros. Inc.*, 60 B.R. 683 [Bkrtcy.S.D.N.Y.1986]; *compare In re Oak Brook Apartments of Henrico County, Ltd.*, 126 B.R. 535 [Bkrtcy.S.D.Ohio 1991] [motion for reconsideration of previous order granting debtor's motion to dismiss its Chapter 11 case denied where movants merely asked court to reexamine its initial conclusions without new evidence to support different result]).

In *Hardage v. Herring Nat. Bank*, 837 F.2d 1319 (5th Cir.1988), the 5th Circuit determined that the bankruptcy court should have granted a Rule 59 motion for reconsideration where the debtor was able to clarify certain financial information upon which the bankruptcy court's initial decision had been rendered. The debtor-farmer who brought the motion was able to show that his cotton crop had actually been sold subsequent to the bankruptcy court's determination for much less than the valuations contained in a government publication which contained projections of crop value (*id.* at pp. 1322–23). Because this "new evidence" or "changed circumstances" could not have taken into account by the bankruptcy court, the 5th Circuit held that the court should have reopened the case and reconsidered the evidence which the debtor-farmer was then able to present. Other courts have relied on *Hardage* as a basis for granting a Rule 59 motion (*see, e.g., Raco Car Wash Systems Inc. v. Smith*, 730 F.Supp. 695, 707–708 [D.S.C. 1989] [court has discretion to consider events occurring after trial in granting a Rule 59 motion]).

The Court finds the holding in *Hardage* to be germane to the instant case. The hearing on the debtor's application to reject the executory contract and VPC's cross-motion to compel assumption was held on February 27, 1992. At that time, the asphalt plant had been closed down over the winter and there were no sales to support the projections made by the debtor.

The order denying the motion for rejection of the contract was signed by the bankruptcy court on May 14, 1992, nearly three months later. By that time, the plant had reopened and apparently had been generating income for the interim 2½ month period. Based on the re-opening of the plant, the alleged monies owed to Sundial by VPC, the purported purchases from L.L.L. Industries, Inc. which had given a letter of intent to Sundial, the requirements contract from the Town of Brookhaven, and the potential business for Sundial as a

result of the Skyline operation on the adjoining property—all of which were circumstances not available to the bankruptcy court at the time of the hearing on the rejection and assumption motions—the Court finds that the debtor's Rule 59 motion should have been granted and the hearing should have been reopened to consider the new evidence.

Furthermore, the Court finds persuasive the debtor's argument that John Walbridge, the expert engaged to assess the income and projections concerning the plant, could have presented relevant and material information concerning the economic viability of the debtor and the proposed reorganization plan had he been permitted to testify.

The Court is also cognizant of the position taken by the Committee of Unsecured Creditors in supporting the debtor. In doing so, the Court notes (1) the requests for an adjournment made by counsel for the Committee on several occasions before the bankruptcy court so that the Committee might have a reasonable time to assess the plans of both Sundial and VPC, and (2) counsel for the Committee's representation at oral argument on November 20, 1992 that the creditors had finally had an opportunity to make such an assessment and had reached a conclusion that they would support Sundial's position in this matter.

Therefore, the Court finds that hearing should have been re-opened, permitting the debtor's expert to testify and allowing input from the Committee of Unsecured Creditors.

## CONCLUSION

Based upon the foregoing, the Court hereby (1) vacates the February 20, 1992, March 4, 1992, May 14, 1992, and June 24, 1992 orders of the Bankruptcy Court; (2) restores the automatic stay insofar as VPC is concerned; and (3) remands this case to the Bankruptcy Court for a full-blown evidentiary hearing, on notice, to the debtor-in-possession, the proposed purchaser VPC, the trustee (if there be any), and the unsecured creditors' committee, to determine whether the rejection by the debtor would

be beneficial to the estate, applying the "business judgment" rule and the principles set forth in this decision, as well as those in *Hardie* and *In re Stable Mews Associates.*

At the hearing, the Bankruptcy Court is requested to review, among other issues, all of the financial data available to the present date in applying the "business judgment" rule, together with the testimony of the debtor's expert, John Walbridge, and any information submitted by the Committee of Unsecured Creditors concerning their recommendation of what is beneficial to the estate.

SO ORDERED.