# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 19, 2019

Lyle W. Cayce
Clerk

No. 19-60163

In the Matter of: VCR I, L.L.C.

>              Debtor

DR. PRADEEP RAI,

>              Appellant

v.

DEREK A. HENDERSON,

>              Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:18-CV-420

Before OWEN, Chief Judge, and HAYNES and COSTA, Circuit Judges.

PER CURIAM:[*]

To encourage the sale of estate property, the Bankruptcy Code bars appellate review of a sale approved by the bankruptcy court if the purchaser acted in good faith and no one obtained a stay pending appeal.  11 U.S.C.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-60163

§ 363(m); *see also In re Sneed Shipbuilding, Inc.*, 916 F.3d 405, 409–10 (5th Cir. 2019).  Because that is what happened here, we AFFIRM the district court's dismissal of the appeal.

I.

VCR I, LLC filed for Chapter 11 bankruptcy.  After filing, VCR agreed to sell 7.65 of 44 acres of land in Madison County, Mississippi—a parcel identified as Tract 4—for $612,500 and a 30-year restrictive easement on an adjacent parcel to one of its creditors, Gluckstadt Holdings, LLC.  The bankruptcy court never authorized the sale, however, and later converted the case to a Chapter 7 bankruptcy.

With the conversion, the task of selling property fell to the Chapter 7 trustee.  The trustee eventually asked the bankruptcy court to allow an auction of real estate, including Tract 4.  The motion proposed an opening bid of $612,500 for Tract 4, the price the debtor had negotiated before the Chapter 7 conversion.  The court granted the motion and approved the trustee's request to hire Taylor Auction and Realty, Inc.

Benny Taylor, the auctioneer, marketed the sale.  Among other marketing techniques, he mailed an informational brochure to prospective bidders; ran advertisements in local and national newspapers; posted a sign at each tract and on a fence along a nearby highway; emailed brochures to members of a popular real estate website; and ran advertisements on commercial real estate websites.  Although some of the online advertising did not generate user "clicks," 24 bidders attended the auction.  The "room was full, all seats were filled," and there was "standing room only in the back."

Taylor used a two-round bidding process to maximize the price.  May-Hawkins, LLC and Phoenix Development Company, LLC submitted the highest bid—$6.75 million—for four tracts: $1.425 million for Tract 1; $1.05

million for Tract 2; $1.95 million for Tract 3; and $2.325 million for Tract 4. The final sale price averaged $5.99 per square foot, one-and-a-half times higher than the trustee's presale estimate of $4.00 per square foot. Tract 4's closing price of $2.375 million was almost four times greater than its opening bid of $612,500, the price at which the debtor had previously agreed to sell.

Dr. Pradeep Rai, the manager and a member of VCR, objected to the sale. He argued that Taylor's auction fee was unreasonably high, the property sold for an unreasonably low price, and that Taylor failed to make reasonable efforts to market the property.

The bankruptcy court held a hearing on Rai's objections. Taylor testified that his marketing efforts were successful, the bidding was "competitive" and "strong," and the auction was "effective." Taylor admitted, however, that advertisements on two commercial real estate websites were deficient and that all 24 registered bidders were from Madison County or the Jackson area.

Jerry Lee Hawkins, a broker representing May-Hawk and Phoenix Development, also testified that the bidding was competitive and that each bidder was "knowledgeable" about the local real estate market. Hawkins denied colluding with any of the other bidders, Taylor, or the trustee. And he denied "do[ing] anything at all to stop the other bidders from bidding in a competitive fashion."

On cross-examination, Hawkins conceded that one of his company's realtors jointly represented KRM Properties, Inc.—another bidder—with an agent from an independent firm. Hawkins testified that had KRM Properties successfully bid, his company would have shared the commission. But Hawkins denied talking to the owner of KRM Properties or to his agent about the bidding process. On redirect, Taylor confirmed that the joint representation did not "chill the bidding in any way."

No. 19-60163

After closing arguments, the court made the following findings of fact and conclusions of law:

- The auction "was properly . . . and adequately marketed";
- the auction had "adequate participation";
- the auction encouraged competitive bidding that increased the sale price;
- there was "no collusion" even though one firm represented different auction bidders;
- the sale was "an arm's length transaction";
- "the price was adequate under the circumstances"; and
- May-Hawk and Phoenix Development were good-faith purchasers under 11 U.S.C. § 363(m).

Overruling Rai's objections, the court approved the sale. Rai did not obtain a stay of the sale. So, in August 2018, the trustee conveyed the property by special warranty deed to the winning bidders.

Rai appealed to the district court. Noting uncertainty about whether a bankruptcy court's good-faith finding under section 363(m) is reviewed *de novo* or for clear error, the court held that the bankruptcy court's conclusion was "correct under either standard." The district court reasoned that the broker's dual representation did "not, in and of itself, suggest collusion," because "the bidding was active and competitive." It also emphasized that Tract 4's final sale price was "nearly four times" greater than Gluckstadt's opening bid and that the entire property's average price of $5.99 per square foot was much higher than the trustee's presale estimate of $4.00 per square foot. Moreover, the district court found that Rai's marketing challenge based on failed online advertising "completely ignore[d] the other marketing channels Taylor Auction used." Concluding that the bankruptcy court correctly determined that the

purchasers acted in good faith and that Rai failed to obtain a stay of the sale, the district court dismissed Rai's appeal as moot under section 363(m).

Rai appealed again.

## II.

Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). This so-called "statutory mootness" provision "assures purchasers that once the bankruptcy court approves the sale and it is consummated (that is, the order is not stayed), then no appellate court can later second-guess the deal." *Sneed Shipbuilding*, 916 F.3d at 408–10. That "blunt finality" might be harsh, but it "attracts investors and helps effectuate debtor rehabilitation." *Cinicola v. Scharffenberger*, 248 F.3d 110, 122 (3d Cir. 2001).

A bankruptcy appeal is moot under section 363(m)—and must be dismissed—if the challenging party failed to obtain a stay of a sale order and the purchaser bought the debtor's assets in good faith. *Matter of VCR I, L.L.C.*, 922 F.3d 323, 326 n.2 (5th Cir. 2019). Rai did not obtain a stay, so the only issue is whether the winning bidders were good-faith purchasers.

A good faith purchaser is "one who purchases the assets for value, in good faith, and without notice of adverse claims." *In re TMT Procurement Corp.*, 764 F.3d 512, 521 (5th Cir. 2014) (quoting *Hardage v. Herring Nat'l Bank*, 837 F.2d 1319, 1323 (5th Cir. 1988)). "[T]he misconduct that would destroy a purchaser's good faith status . . . involves fraud, collusion between

the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* (ellipses in original) (quoting *In re Bleaufontaine, Inc.*, 634 F.2d 1383, 1388 n.7 (5th Cir. 1981)).

The trustee bears the burden of establishing a good faith purchase. *Id.* at 520. Like the district court, we need not resolve the appellate standard of review for the bankruptcy court's finding of good faith because we would affirm whether our review is *de novo* or for clear error.

## III.

Overwhelming evidence shows this was a good faith purchase. Taylor extensively marketed the auction for two months; 24 registered bidders attended the sale; two rounds of bidding increased the sale price; Tract 4's closing price was nearly four times greater than its opening bid; and the $6.75 million final sale price for all tracts was higher than the trustee anticipated. Rai challenges the bankruptcy court's good-faith finding on three grounds. None gives us serious pause.

Rai primarily argues that Hawkins, the real estate broker, violated ethical and fiduciary duties, which Rai believes precludes a finding of good faith. This allegation is based on Hawkins's representing the purchasers and, through an agent of his firm, another bidder, meaning that Hawkins would have earned a commission if either bidder bought the property. But Rai does not show that Hawkins failed to disclose this conflict or to obtain consent to represent both parties. More fundamentally, as the district court observed, that Hawkins's firm represented two bidders does not show collusion. Because Hawkins would receive a commission from the sale to either of these bidders, he had no incentive to collude and depress the price; a reduction in the sales price would have adversely affected his pocketbook. Neither evidence nor common sense supports Rai's collusion allegation.

Rai next argues that Taylor inadequately marketed the auction, resulting in suppression of the bidding.  It is true that some ads were ineffective, but that is typically true of marketing efforts; some strategies work better than others.  That is why marketeers try different approaches, which Taylor did.  The result was a well-attended and competitive auction.  Rai complains that only bidders from Mississippi attended.  But a host of reasons might explain why there was only local interest despite national marketing efforts.  None of this undermines the compelling evidence that the real estate sold for a market price.  It is brazen for Rai to contend otherwise when the company he helped run tried to sell Tract 4 just a couple years earlier for less than 1/3 of what it sold for at auction.

Lastly, Rai argues that Taylor might not have been a disinterested auctioneer because the trustee's son works for him "[f]rom time to time."  It is unclear how this additional conjecture amounts to fraud that undermines the competitive nature of the auction or otherwise casts doubt on the economic evidence that the land was sold for value at a competitive auction.

* * *

There was a good faith purchase of the land.  Because no one obtained a stay of the sale, the finality interest section 363(m) promotes kicked in.  No appeal could disrupt the purchase.  We thus AFFIRM the district court's dismissal of the appeal.