# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-40350

United States Court of Appeals
Fifth Circuit

**FILED**
February 5, 2019

Lyle W. Cayce
Clerk

In The Matter of: SNEED SHIPBUILDING, INCORPORATED,

    Debtor

NEW INDUSTRIES, INCORPORATED,

    Appellant

v.

ALLISON D. BYMAN, Chapter 11 Trustee of Sneed Shipbuilding,
Incorporated; ESTATE OF MARTIN M. SNEED, SR.,

    Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before KING, HIGGINSON, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

In bankruptcy, the right to appeal must sometimes give way to a heightened interest in finality. Perhaps the most prominent example is equitable mootness, a judicially created doctrine preventing appeals that threaten to unravel a particularly interrelated confirmation plan. *See In re Manges*, 29 F.3d 1034, 1038–39 (5th Cir. 1994). Bars on appeals can also be

No. 18-40350

found in the Bankruptcy Code, such as the statute that prevents "reversal or modification on appeal of an authorization . . . of a sale or lease of [estate] property" unless that order was stayed pending appeal.  11 U.S.C. § 363(m); *see also In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994) ("Several provisions of the Bankruptcy Code of 1978 provide that courts should keep their hands off consummated transactions.").

The bankruptcy trustee in this case invokes both equitable and statutory mootness to try and block an appeal of a bankruptcy court's approval of a sale of key estate assets, including a settlement necessary to facilitate the transaction.  Equitable mootness is inappropriate here, but we conclude that section 363(m) made the bankruptcy court's approval the final word on the subject when the objector did not obtain a stay of that ruling.

I.

Sneed Shipbuilding owned two shipyards in Texas, including one in Channelview.  It filed for bankruptcy in 2016 and, after reorganizing turned tumultuous, the court appointed a trustee.  The trustee then filed a complaint against the probate estate of Sneed Shipbuilding's longtime principal Martin Sneed and several other Sneed family members.  The complaint alleged that Martin attempted to fraudulently transfer ownership of the Channelview shipyard to himself, among other fraudulent activities.  It sought to avoid (bankruptcy-speak for "undo") those transactions and have the court declare that Sneed Shipbuilding was the true titleholder to the Channelview shipyard.

While the bankruptcy progressed slowly, operations at the Channelview shipyard ground to a halt as a barebones staff serviced the one remaining customer.  Conversion to Chapter 7 and liquidation loomed as a real and unpleasant possibility, so the trustee tried to sell the shipyard. San Jac Marine was interested in purchasing it, but only if the bankruptcy estate and Martin's probate estate resolved their dispute over the title.  To get clean title, the

No. 18-40350

trustee had two undesirable options: years of litigation against the probate estate, during which the shipyard would lose much of its value, or settlement with the probate estate on unfavorable terms.  She chose the latter.

The sale to San Jac Marine was made conditional on bankruptcy approval of the settlement.  The parties structured the settlement and sale together along these lines: San Jac Marine paid Sneed Shipbuilding nearly $15 million and the trustee used those funds to ensure that the title it transferred was clean; encumbrances from a secured creditor, the debtor-in-possession's lender, and property taxes were all paid off.  In addition, Martin's probate estate gave up both its claim to the Channelview property and any other claims in the bankruptcy for about $8 million and the trustee's agreement to release any other avoidance actions.  All told the settlement and sale looked something like this:



No. 18-40350

The bankruptcy court approved the settlement and sale in a single order, finding its provisions "non-severable and mutually dependent." New Industries, an unsecured creditor which claimed that Sneed Shipbuilding owed it $550,000 from a construction contract, unsuccessfully objected to the disbursement of funds to the probate estate. It did not seek a stay of the court's approval of the transaction.

New Industries appealed. The trustee asked the district court to dismiss the appeal, citing both equitable mootness and 11 U.S.C. § 363(m). The district court dismissed the appeal as moot without identifying whether it was applying equitable or statutory mootness.

## II.

The parties focus on whether equitable mootness applies. This doctrine allows courts to abstain from appeals of plan confirmation orders, allowing the interrelated web of parties to rely on a final decision. *See In re Pacific Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009). As many courts have noted, equitable mootness is not constitutional mootness. In a sense, the bankruptcy doctrine presents the opposite concern of Article III mootness. A case is not equitably moot because an appellate reversal would have no effect; it is equitably moot when a reversal might have too much effect. *See Pacific Lumber*, 584 F.3d at 240; *In re Continental Airlines*, 91 F.3d 553, 569 (3rd Cir. 1996) (Alito, J., dissenting). Without an express basis in the Bankruptcy Code, equitable mootness is controversial. *Compare In re One2One Communications, LLC*, 805 F.3d 428, 441 (3rd Cir. 2015) (Krause, J., concurring); *In re Continental Airlines*, 91 F.3d at 569 (Alito, J., dissenting), *with In re Tribune Media Co.*, 799 F.3d 272, 287–88 (3rd Cir. 2015) (Ambro, J., concurring); *see also UNR*, 20 F.3d at 769 (rejecting the "equitable mootness" label as misleading, but agreeing that "a plan of reorganization, once implemented, should be disturbed only for compelling reasons").

4

No. 18-40350

We are more hesitant to invoke equitable mootness than many circuits, treating it as a "scalpel rather than an axe." *Pacific Lumber*, 584 F.3d at 240; *see also* 7 COLLIER ON BANKRUPTCY ¶ 1129.09 (16th ed. 2018) (referring to this circuit's "willingness to tolerate the possibility that reversal will disrupt the plan" as a "deep divide" between us and other circuits). Equitable mootness typically requires a reorganization plan that is at least "substantially consummated." *In re Hilal*, 534 F.3d 498, 500 (5th Cir. 2008); *see also In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d 553, 558 (5th Cir. 2009) (declining to find dispute over settlement agreement equitably moot, without deciding as a categorical matter whether the doctrine could apply in a Chapter 7 liquidation). That end stage of the Chapter 11 process must be reached because the concern of equitable mootness is that appellate reversal might undermine the plan and the parties' reliance on it. *In re SI Restructuring, Inc.*, 542 F.3d 131, 135–36 (5th Cir. 2008). But Sneed Shipbuilding's bankruptcy case has never reached that stage because no plan has been proposed.

We recognize that some courts outside our circuit have employed equitable mootness when reviewing settlement agreements, not just plan confirmations, in particularly messy cases. *See, e.g.*, *In re Delta Airlines, Inc.*, 374 B.R. 516, 522–525 (S.D.N.Y. 2007). But that just highlights the second reason why equitable mootness should not apply to the order that New Industries appeals: this settlement and sale were not sufficiently complex. Equitable mootness is aimed at limiting review of complex plans whose implementation has substantial secondary effects. *See, e.g., Tribune*, 799 F.3d at 274, 281 (finding moot an appeal of $7.5 billion reorganization involving 243 different classes of creditors). Appellate intervention into reorganization plans of such complexity may affect many innocent third parties. *See Manges*, 29 F.3d at 1042–43. Our ability to produce a single graphic to illustrate the Channelview transaction demonstrates that this case does not rise to that level

5

No. 18-40350

of complexity.  Reversal on appeal would only affect a few third parties, all of whom participated in the bankruptcy court.  This does not appear to be the case to expand equitable mootness into new frontiers.

### III.

That is especially so because the trustee also raised the possibility of mootness under section 363(m).  The statute limits the ability of appellate courts to review the sale of estate property when the order approving the transaction is not stayed.  11 U.S.C. § 363(m); *see also In re Ginther Trusts*, 238 F.3d 686, 689 (5th Cir. 2001) (holding that section 363(m) even prevented appeals to determine whether the bankruptcy court lacked jurisdiction).  A different motivation than complexity motivates section 363(m) mootness: the need to encourage parties to bid for estate property.  *See In re Bleaufontaine, Inc.*, 634 F.2d 1383, 1389 n.10 (5th Cir. 1981) ("If deference were not paid to the policy of speedy and final bankruptcy sales, potential buyers would not even consider purchasing any bankrupt's property.").  The statute assures purchasers that once the bankruptcy court approves the sale and it is consummated (that is, the order is not stayed), then no appellate court can later second-guess the deal.  The cost, of course, is disposing of the full judicial review for legal accuracy that typically follows a trial court's ruling.  But Congress thought that trade was worth making to encourage buyers to come to the table ready to revitalize useful assets, as those buyers might otherwise stay away when a transaction remains shrouded in legal uncertainty.  The Bankruptcy Code thus entrusts review of a sale solely to the bankruptcy court's in-the-moment judgment unless a stay is obtained that prevents the sale from closing prior to appellate review.

Recognizing this role of section 363(m), New Industries says it does not challenge the sale of the property but only challenges the disbursement of cash to the probate estate.  But it does not cite any authority that would allow us to

6

No. 18-40350

perform this isolated analysis. Paying off the probate estate was an essential feature of the sale. And when creditors have tried to cut off part of a sale and challenge it elsewhere, courts have found their appeals moot. *See In re Trism, Inc.*, 328 F.3d 1003 (8th Cir. 2003) (challenge to release of avoidance action that was essential to sale of estate assets); *In re Ala. Aircraft Indus., Inc.*, 464 B.R. 120 (D. Del. 2012) (dispute over creation of litigation trust with funds from sale of estate assets). Without the more than $8 million payment, the probate estate would not have released its claim that it owned the Channelview shipyard. And without that release, San Jac Marine likely would have walked away from the deal. As the bankruptcy court noted, there is no way to sever the settlement from the sale; they are mutually dependent. Congress has ordered us not to review such decisions by the bankruptcy court when they are not stayed. This case is moot.

\* \* \*

We AFFIRM the district court's dismissal of the appeal.