# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 1, 2022

Lyle W. Cayce
Clerk

No. 21-20049

IN THE MATTER OF: ULTRA PETROLEUM CORPORATION,

*Debtor*,

LOUIS C. TALARICO,

*Appellant*,

*versus*

ULTRA PETROLEUM CORPORATION,

*Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-3244

Before HIGGINSON, WILLETT, and HO, *Circuit Judges*.

STEPHEN A. HIGGINSON, *Circuit Judge*:[*]

This appeal arises from the Chapter 11 bankruptcy proceedings of Ultra Petroleum Corporation ("Ultra"). Appellant, Louis C. Talarico, is a

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 21-20049

shareholder appealing the district court's dismissal of his challenge to the bankruptcy court's confirmation of Ultra's plan of reorganization. For the reasons that follow, we AFFIRM.

I.

On May 14, 2020, Ultra filed for Chapter 11 bankruptcy. Ultra, an independent oil and natural gas exploration and production company, asserted that in 2020 "certain macroeconomic and geo-political conditions," such as the uncertainty of agreements to reduce output and the COVID-19 pandemic, "have exacerbated" the volatility of oil and natural gas commodity prices. According to Ultra, its "capital structure consist[ed] of approximately $1.97 billion in total principal amount outstanding as of May 14, 2020." Though Ultra claimed it had "explored numerous paths to address its dwindling liquidity and capital structure," it "determined that filing chapter 11 presented the best option to right-size its balance sheet."

Talarico objected to Ultra's proposed reorganization plan on June 8, 2020, arguing that Ultra was seeking bankruptcy in bad faith and that Ultra was underrepresenting its assets to the bankruptcy court. He also sought permission to develop a new, alternative plan. On July 6, 2020, Talarico moved to compel production of documents and to sanction Ultra attorneys.

On August 10, 2020, the bankruptcy court commenced a six-day evidentiary hearing on the various matters before it. Talarico participated — he questioned witnesses, and he requested judgment as a matter of law and the establishment of an equities securities committee. The bankruptcy court denied these requests, though it granted his request for additional discovery.

On August 19, 2020, Ultra filed its "Second Amended Joint Chapter 11 Plan of Reorganization of Ultra Petroleum and its Debtor Affiliates" ("the Plan"). The bankruptcy court approved the Plan on August 22.

No. 21-20049

Litigation continued. Talarico appealed the bankruptcy court's confirmation order to the district court on September 4, 2020. Talarico did not seek a stay of implementation of the Plan in the bankruptcy court, nor did he seek one in the district court during his appeal.

On November 9, 2020, Ultra moved to dismiss Talarico's appeal as equitably moot and for lack of bankruptcy standing. Ultra argued that the Plan had been substantially consummated because the Plan took effect on September 14, and this date triggered several developments. In his response to Ultra's assertion of equitable mootness, Talarico did not dispute that he had not sought a stay, nor did he dispute the factual developments that had occurred during implementation of the Plan; rather, he argued (as he now argues before us) that any "'substantial consummation' is subject to revocation or recission" because the issues he raised "are rooted in fraud and deceit" and thus are consequential to the integrity of the Chapter 11 process. He also argued that, because "virtually all of" the affected parties were sophisticated investors, there were "no innocent third parties at risk."

The district court agreed with Ultra and dismissed Talarico's appeal, holding that (1) the appeal was equitably moot and (2) Talarico lacked standing to bring an appeal under the "third-party-release" provisions of the Plan where he had opted out of the provision.

In support of its holding that the appeal was equitably moot, the district court noted that the Plan was confirmed, had been implemented, and that "Ultra no longer exists because it has been replaced by a 'reorganized and recapitalized entity.'" The district court adopted the following undisputed facts in support of its Memorandum:

a.   The Plan has been consummated since August 2020, and substantial movements in effectuating the terms of the Plan have occurred, including;

3

No. 21-20049

b.      discharged nearly $2 billion of debt held by hundreds of creditors and permanently enjoined those creditors from asserting their claims against Ultra;

c.      canceled approximately 199,335,784 shares of Ultra's common stock and dissolved Ultra;

d.      issued approximately 38,782,513 shares of new common stock, which are now traded, and 33,716 warrants;

e.      collected approximately $85 million of new capital investments through a rights offering;

f.      closed on a $60 million exit loan facility;

g.      distributed millions of dollars in cash to holders of general unsecured claims;

h.      amended and filed new organizational documents for UP Energy;

i.      transferred to UP Energy all of Ultra's property and interests;

j.      filed a Form 15 with the Securities Exchange Commission to deregister Ultra's old common stock; and

k.      named a new slate of seven directors, who have started to make critical decisions for UP Energy.

Importantly, the court also reasoned that "the allegation of fraud in the management of Ultra's affairs is not a matter that can be litigated in the Chapter 11 proceeding, because the issue relates to conduct of the officers of Ultra, not Ultra the entity." Finally, the district court concluded on the issue of fairness that:

> [T]he evidence is undisputed that the stockholders, particularly, Talarico, is out-of-money and that they participated in the negotiations during the 'prepackaged plan' for reorganization. Having permitted the Plan to be implemented, and not having sought a stay in the bankruptcy

4

court or this Court, Talarico cannot be heard to argue lack of fairness of the Plan.

Talarico appealed.

## II.

"In reviewing the rulings of . . . the district court sitting in bankruptcy, we review findings of fact for clear error and conclusions of law *de novo*." *In re TMT Procurement Corp.*, 764 F.3d 512, 519 (5th Cir. 2014). Mixed questions are reviewed de novo. *Id.* We review an equitable mootness dismissal *de novo*. *In re Tex. Grand Prairie Hotel Realty, L.L.C.*, 710 F.3d 324, 327 (5th Cir. 2013).

## III.

The threshold and determinative issue concerns the doctrine of equitable mootness: "a judicially created doctrine preventing appeals that threaten to unravel a particularly interrelated confirmation plan." *In re Sneed Shipbuilding, Inc.*, 916 F.3d 405, 407 (5th Cir. 2019). Unlike Article III mootness, equitable mootness is prudential, not jurisdictional. *In re Blast Energy Servs., Inc.*, 593 F.3d 418, 424 (5th Cir. 2010). Equitable mootness, where applicable, allows "the interrelated web of parties" implicated by the Chapter 11 proceedings to "rely on a final decision." *Sneed Shipbuilding*, 916 F.3d at 408. It attempts to reconcile the quick, across-the-board approach in bankruptcy courts with the individual, slower nature of appellate review. *See* 7 COLLIER ON BANKRUPTCY ¶ 1129.09 (16th ed. 2021) ("Appeals from confirmation orders . . . present unique situations given bankruptcy's focus on quick and collective relief of debtors' financial problems."). The doctrine "authorizes an appellate court to decline review of an otherwise viable appeal of a Chapter 11 reorganization plan, but only when the reorganization has progressed too far for the requested relief practicably to be granted." *Blast Energy*, 593 F.3d at 424.

No. 21-20049

Our court is "more hesitant to invoke equitable mootness than many circuits, treating it as a 'scalpel rather than an axe.'" *Sneed Shipbuilding*, 916 F.3d at 409 (quoting *In re Pac. Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009)). We have declined to apply the doctrine when practicable relief is available in the form of fractional recovery. *Pac. Lumber*, 584 F.3d at 250; *see also* 7 COLLIER ON BANKRUPTCY ¶ 1129.09 (16th ed. 2021) (describing the "deep divide" between how the Fifth Circuit and other circuits approach equitable mootness issues). In deciding whether an appeal is equitably moot, we apply a three-pronged analysis: (1) "whether a stay has been obtained"; (2) "whether the plan has been 'substantially consummated'"; and (3) "whether the relief requested would affect either the rights of parties not before the court or the success of the plan." *In re Manges*, 29 F.3d 1034, 1039 (5th Cir. 1994) (citation omitted). Yet "[t]here is no set weight given to the respective prongs," because:

> In some cases, a single prong may be determinative, but more often the first two are relevant only insofar as they affect the answer to the third question; if no stay has been obtained and the plan has been substantially consummated, the more likely the third prong indicates equitable mootness.

*Blast Energy*, 593 F.3d at 424.

Talarico does not dispute that he did not obtain, nor seek, a stay. Nor does he appear to dispute that the Plan has been "substantially consummated" or take issue with any of the undisputed facts adopted by the district court illustrating the various ways that the Plan has been effectuated.[1]

---

[1] Instead, Talarico makes the broad and conclusory assertion that "[t]he issues raised by Shareholder in the bankruptcy and on appeal are rooted in fraud and deceit and as such any 'substantial consummation' is subject to revocation or recission." Though Talarico has filed a separate suit regarding securities fraud and other claims, in this case he has not developed a claim of fraud. Rather, in appealing the district court's dismissal of the bankruptcy court's confirmation order, he merely identifies statements that he disagrees

As the district court found in December 2020, "[t]ransactions have been . . . consummated by parties in reliance on the fact that the Plan has been implemented and no stay sought," and the Plan has only become further consummated during the pendency of this appeal, which Talarico did not seek to expedite, but rather sought to extend. Accordingly, both the first and second prongs weigh in favor of dismissal.

The third prong also weighs in favor of dismissal. The relief requested would certainly affect the success of the Plan. Though this court has denied dismissal on equitable mootness grounds where we could "grant partial relief" without "disturbing the reorganization," *see Grand Prairie Hotel*, 710 F.3d at 328, we do not analyze whether fractional recovery is possible because Talarico has stated that he wants full re-litigation of the bankruptcy proceedings. His requested relief is for this court to:

> [R]everse the Confirmation Order to correct the errors therein and remand to the bankruptcy court for further proceedings including: ordering proper discovery in accordance with the Federal Rules of Civil Procedure; ordering the establishment of an equity committee for shareholders; ordering that the overbroad release provisions of the Plan and Confirmation Order be struck; ordering further proceedings on the valuation of the Undeveloped Inventory and the estate and granting other such relief to which the Appellants may justly be entitled.
>
> Alternatively, and as suggested in Shareholder's Objection, this Court could resolve the matter by ordering that the Undeveloped Inventory assets – which Debtors and their

---

with, and asks, as relief, to remand "to investigate the uncontroverted evidence of fraud for the first time." Because Talarico does not provide sufficient authorities or factual background for his claims of fraud, they are properly pursued in his separate securities fraud action, not in his appeal of the district court's equitable mootness dismissal.

constituents believe is valued at zero – to be distributed to
equity shareholders.

We, therefore, decline the invitation to unwind the Plan and overturn the
confirmation order.[2]

Additionally, as previously noted, the district court found that
"transactions have been . . . consummated by parties in reliance on the fact
that the Plan has been implemented and no stay sought." Accordingly, the
relief requested would affect the rights of parties not before us. Talarico
argues that "there was no change to the *status quo* and nothing about the Plan
that creates any new or unique reliance to or from any third party as a result
of the Plan." But Talarico fails to grapple with any of the undisputed facts
found by the district court to have occurred since August of 2020, when the
Plan was implemented and consummated. Talarico further argues that any
affected parties were present in bankruptcy court and are hedge funds with
sophisticated counsel; thus, according to him, they are not "innocent."
Though we may take into account whether "adverse appellate consequences
were foreseeable to . . . sophisticated investors who opted to press the limits
of bankruptcy confirmation and valuation rules," *Pac. Lumber*, 584 F.3d at

---

[2] As to Talarico's alternative requested relief, that certain "Undeveloped
Inventory" with a valuation of zero be distributed to the Class 10 equity interest holders
(of which Talarico is a member), this remedy is based on Talarico's argument that the
valuation was bogus and that the bankruptcy court erred in admitting it. The remedy for
such an error would not be what Talarico suggests —cherry-picking an asset and
distributing it to his class. His class has no right to that inventory established through the
bankruptcy proceedings. And it is unclear how the partial remedy regarding the
undeveloped inventory would relate to Talarico's other claims, since those claims for the
most part explicitly request unwinding the Plan by reversing the confirmation order. *See,
e.g., In re Premier Ent. Biloxi LLC*, No. 08-60349, 2009 WL 1616681, at *4-5 (5th Cir. June
9, 2009) (unpublished) (declining to consider a request to turn over certain funds to
appellants where "doing so would amount to an unwinding of the confirmed plan as a
whole" because "Appellants' rights to those funds have not yet been established through
the ordered litigation").

244, having read Talarico's briefs and examined the record, we are unpersuaded that any such limits were pressed.

We thus conclude that the third prong also weighs in favor of dismissal. None of Talarico's arguments to the contrary persuade us otherwise. Though he contends that this case is similar to *Pacific Lumber*, 584 F.3d 229, in that case we decided whether each claim was equitably moot individually and fashioned partial, practical relief for some of the secured creditors, *id.* at 243-244, and for an administrative claim, *id.* at 250. We also struck non-debtor releases from the plan. *Id.* at 251-253. However, we denied relief to unsecured creditors as equitably moot where "the plan has been substantially consummated" and "third-party expectations cannot reasonably be undone." *Id.* at 250-51. Talarico is a shareholder; he is not a secured creditor, a class that we have been careful in applying the doctrine of equitable mootness against. *See Grand Prairie Hotel*, 710 F.3d at 328 ("This Circuit has taken a narrow view of equitable mootness, particularly where pleaded against a secured creditor.").

Talarico also cites to *In re Hilal*, 534 F.3d 498 (5th Cir. 2008), to argue that equitable mootness should not apply to his appeal because equity supports review of issues that go to the integrity of the bankruptcy process. In *Hilal*, we concluded that equitable mootness did not apply because Hilal did not appeal the entire confirmation order; rather, he only opposed provisions relating to the Trustee. *Id.* at 500. We decided to reach the issue, holding that:

> Not only is there no potential adverse effect on the plan or third parties from our hearing the appeal, but equity strongly supports appellate review of issues consequential to the integrity and transparency of the Chapter 11 process. The terms of professional compensation are integral to maintaining

these standards, as is the extent to which bankruptcy professionals may be released from liability for their errors.

*Id.* at 500-01. Here, by contrast, Talarico is requesting reversal of the entire confirmation order. Furthermore, though he argues that the opt-out process and releases were improper (an issue that may touch on the integrity of the bankruptcy process), he himself managed to opt-out and thus has no standing to challenge the releases.

The issues identified by Talarico in his appeal are issues that the doctrine of equitable mootness was fashioned to prevent. Equitable mootness "favors the finality of reorganizations and protects the interrelated multi-party expectations on which they rest." *Pac. Lumber*, 584 F.3d at 240. It is "a recognition by the appellate courts that there is a point beyond which they cannot order fundamental changes in reorganization actions." *Manges*, 29 F.3d at 1039. In this very appeal, Talarico twice requested extensions of time. Meanwhile, consummation of the Plan continued, with no stay put in place. Now, rather than pointing to errors made by the district court in its equitable mootness dismissal or to errors made by the bankruptcy court with discrete solutions that we could solve through fractional recovery, Talarico points to four broad procedural complaints he intimates might lead us to "overturn" the confirmation order and bring the parties back to square one: (1) whether the Bankruptcy Court "erred in its rulings on discovery and evidentiary matters;" (2) whether the Bankruptcy Court "erred in denying Shareholder's Rule 52(c) motion;" (3) whether the Bankruptcy Court "erred in approving the Plan that contained broad third-party releases in favor of non-debtors;" and (4) whether the Bankruptcy Court "erred in its conclusions related to Debtors' valuation." To provide Talarico the relief he requests on these issues now, after substantial confirmation of the Plan, would be to throw the reorganization into chaos. We decline the invitation.

## IV.

No. 21-20049

If the doctrine of equitable mootness is meant for any case, it is this one. For the reasons set forth above, we AFFIRM.